## IN THE UNITED STATES DISTRICT COURT
### NOTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **STEVEN YARGER**, *on behalf of himself and all others similarly situated,* | ) ) ) | Case No. 3:22-cv-2291 |
| | ) | |
| | ) | Judge Jack Zouhary |
| Representative Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **TM FINAL LTD., formerly known as TIREMAN AUTO SERVICE CENTERS, LTD.,** | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## JOINT MOTION FOR AN ORDER

## I.    INTRODUCTION

Representative Plaintiff Steven Yarger (hereinafter referred to as either "Yarger or "Representative Plaintiff") and Defendant TM Final Ltd., f/k/a Tireman Auto Service Centers, Ltd. ("Defendant") (Representative Plaintiff and Defendant are, collectively, the "Parties") respectfully move this Court for an Order to Clarify whether the Parties' FLSA Collective Action Settlement Agreement and Release ("Settlement" or "Agreement") is subject to Court approval or if the Parties should administer the Settlement like any other private settlement pursuant to Fed. R. Civ. P. 41(a) for the reasons explained in Section III(A) below.

Should the Court hold that Court approval is still required, the Parties respectfully request that the Court enter the proposed Order (attached as Exhibit C) approving the proposed Settlement as fair, reasonable, and adequate, and dismiss this case with prejudice because the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the Fair Labor Standards Act of 1938, as amended ("FLSA").

7535110.1

The Settlement was achieved during the course of arms-length negotiations among the Parties, by and through experienced counsel, and resolves bona fide disputes between the Parties. If approved by the Court, the Settlement will involve settlement payments to Representative Plaintiff and fifteen (15) additional individual collective members who have joined this action.

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit A:      Collective Action Settlement Agreement and Release

Exhibit B:      Declaration of Daniel I. Bryant[1]

Exhibit C:      [Proposed] Order Granting Joint Motion for Approval of FLSA Collective Action Settlement and Dismissal with Prejudice

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Action

On December 20, 2022, Representative Plaintiff filed a lawsuit, styled as *Steven Yarger, on behalf of himself and all others similarly situated, v. TM Final Ltd., f/k/a Tireman Auto Service Centers, Ltd*, Case No. 3:22-cv-2291, in the United States District Court for the Northern District of Ohio, Western Division (Toledo, Ohio) ("Action").  In the Action, Representative Plaintiff asserted a failure to pay at the correct regular rate of pay claim against Defendant under the FLSA, the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.03 ("Ohio Wage Act"), and the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA") (Ohio Wage Act and the OPPA collectively referred

---

[1] Hereinafter "Bryant Decl."

to as the "Ohio Acts"). (*See* ECF No. 1, Complaint, *generally.*) In particular, Representative Plaintiff alleged that Defendant paid him and other technicians a base hourly wage for hours worked. (*Id.*) In addition to the base hourly wage, Representative Plaintiff maintained that Defendant pays its hourly, non-exempt service center employees in the positions of technician, commissions based on a percentage of sales of automobile services performed each shift in the form of "SPIFF" payments (hereinafter "Additional Remuneration") that must be included in the calculation of employees' regular rate of pay for purposes of calculating their overtime compensation pursuant to 29 C.F.R. § 778.117. (*Id.*) Further, Representative Plaintiff alleged that Defendant failed to pay him, and other similarly situated hourly, non-exempt technicians for all overtime compensation due to the failure to include the Additional Remuneration when calculating overtime premium resulting in the failure to pay at the correct regular rate of pay during workweeks when employees worked overtime and received Additional Remuneration in violation of the FLSA and Ohio Acts. (*Id.*)

On July 28, 2023, Defendant filed its Answer to the Complaint, denied, and continues to deny, the allegations contained in the Complaint and that it violated the FLSA, Ohio Wage Act, OPPA, and/or any other federal, state or local law in any way. In its Answer, Defendant also asserted twenty-seven (27) affirmative defenses. (ECF No. 15, Answer to Complaint, PageID # 71-74.)

On August 30, 2023, the Parties stipulated to Court-Supervised Notice to Potential Opt-In Plaintiffs pursuant to 29 U.S.C. §216(b) ("Stipulation to FLSA Notice"). (*See* ECF No. 16.) In the Stipulation to FLSA Notice, the Parties stipulated that this Action was a Collective Action under the FLSA and agreed upon a manner to send notice out to "All former hourly, non-exempt employees who held the positions of Alignment Technician, Diagnostic Technician, Technician,

and Lead Technician at any of the eighteen (18) service centers formerly owned by TM Final, Ltd., who performed more than 40 hours of work in any workweek in which they also received a SPIFF payment during the time period from December 20, 2019 to December 20, 2022" ("Putative Collective Class Members"). (ECF No. 16, at PageID # 76-78.)

On August 31, 2023, the Court entered an Order Granting the Parties' Joint Stipulation to Court-Supervised Notice and Approving Notice and Consent to the Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b). (ECF No. 17.) The Notice and Consent to Join were distributed to the 147 Putative Collective Class Members, who had sixty (60) days to opt into the Action. There is a total of fifteen (15) individuals, including Representative Plaintiff, who have opted into the Action ("Opt-In Plaintiffs" unless otherwise specified). Thereafter, to avoid the burden, expense, risks, disruption, and uncertainty of protracted collective action litigation, the Parties engaged in efforts to resolve the claims of the Representative Plaintiff and the Opt-In Plaintiffs (collectively, "Plaintiffs").

**B.** **Negotiation of The Settlement**

To prepare for these efforts, the Parties engaged in targeted discovery. In particular, Defendant produced available time and payroll records for the Plaintiffs during the applicable period of December 20, 2019 to December 20, 2022. Each of the Parties prepared their own damages model using this information (Ex. A, Agreement, ¶¶ 6-9.) The data included dates of employment as well as the time and pay data for Representative Plaintiff and Opt-In Plaintiffs during the applicable Calculation Period. (*Id.*) Representative Plaintiff retained a Masters-level economist to construct a damages model for the Calculation Period. (*Id.*) Defendant also constructed its own comprehensive analysis using the time and pay data. (*Id.*) In advance of the Settlement Conference scheduled for July 10, 2024, the Parties exchanged a comprehensive

analysis on their factual and legal positions regarding the allegations of the operative Complaint and Defendant's defenses and affirmative defenses. (*Id.*) Following the exchange, they exhausted their efforts until they reached a resolution in principle on July 9, 2024. (*Id.*) The purpose of the Agreement is to fully and finally settle all Released Claims that the Representative Plaintiff and the Opt-In Plaintiffs may have against Defendant. (*Id.*)

### C.    <u>The Settlement Terms</u>

The Total Settlement Amount is the gross settlement amount of Thirty-Two Thousand Dollars and Zero Cents ("$32,000.00"), which sum will cover: (1) all Settlement Awards, as defined below; and (2) all Plaintiffs' Counsel's attorneys' fees and costs. (Ex. A, Agreement, ¶ 16; Ex. B, Bryant Dec., ¶ 19)

Each Eligible Plaintiff's Settlement Award constitutes their alleged unpaid overtime damages during the Calculation Period. The Eligible Plaintiffs' Settlement Awards reflect a likely recovery of 100% of their alleged unliquidated damages plus approximately 58% of their liquidated damages during the Calculation Period as calculated by Plaintiffs' Counsel. (Ex. A, Agreement, ¶ 28) Any Plaintiff who either did not work over forty (40) hours, who did not have any eligible workweeks during the Calculation Period, or did not meet the class definition will receive a minimum payment of at least $50 in recognition of returning a Consent Form (the "Participation Award"). (*Id.*)

Defendant shall allocate 50% of each Eligible Plaintiff's individual Settlement Award to alleged lost wage damages, and this amount will be subject to all legally required deductions and reported on IRS Form W-2. (Ex. A, Agreement, ¶ 35.) Defendant shall also allocate the remaining 50% of each Eligible Plaintiff's Settlement Award to alleged liquidated damages, and this amount will be reported on IRS Form 1099. (*Id.*) The Participation Award will be treated as a non-wage

payment for participation in this lawsuit despite having no eligible monetary damages and will not be subject to ordinary payroll withholdings and deductions, and this amount will be reported on IRS Form 1099. Any Settlement Awards that are not cashed within one hundred eighty (180) days will revert back Defendant, and the Agreement shall remain binding on any Plaintiffs who failed to negotiate their Settlement Award check. (*Id*., ¶ 37)

Plaintiffs have asserted wage and hour class action and collective action claims arising from their employment with Defendant, including claims asserted under the FLSA and Ohio law. Under these claims, Plaintiffs' Counsel is entitled to a statutory award of Attorneys' Fees and Costs. The Parties agree that Representative Plaintiffs' Counsel is entitled to payment of Attorneys' Fees in the form of their lodestar, which was reduced as part of the settlement negotiations, in the amount of Seventeen Thousand Five Hundred Dollars and Zero Cents ($17,500.00) plus litigation costs of Sixth Thousand Six Hundred Seventy-Nine Dollars and Fifty-Three Cents ($6,679.53), for a total of Twenty-Four Thousand One Hundred Seventy-Nine Dollars and Fifty-Three Cents ($24,179.53) (collectively hereinafter "Attorneys' Fees and Costs") (Ex. A, Agreement, ¶ 30; Ex. B, Bryant Decl., ¶¶ 19) The Parties maintain that the Attorneys' Fees and litigation costs are reasonable in all respects, particularly here since Plaintiffs' Counsel's lodestar exceeds $17,500.00. (Ex. B, Bryant Decl., ¶ 19-39)

In exchange for the total Settlement Amount and other consideration provided for in the Agreement, the Action will be dismissed with prejudice, and Plaintiffs will release Defendant and other Released Parties from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, under the FLSA, the Ohio Acts, or any other applicable federal, state or local wage-and-hour law relating to unpaid and/or untimely payment of wages, overtime, or compensation of any kind, any related common

Page **6** of 27

law and equitable claims (e.g., breach of contract, unjust enrichment, etc.), and any claims for liquidated damages, attorneys' fees, costs, expenses, penalties, interest, settlement administration costs, and service awards. (Ex. A, Agreement, ¶ 38)

## III.   THE PROPRIETY OF APPROVAL

### A.  Does an FLSA Collective Action Settlement Require Court Approval?

Regarding settlement of FLSA collective actions, there has been a recent development of divergent views as to whether approval is subject to Court approval or not. As one Court observed, "[a]lthough the Sixth Circuit has never definitively answered the question of whether court approval is required for FLSA settlement agreements, district courts in our Circuit regularly find that the FLSA context counsels in favor of courts approving settlements." *Lopez v. Silfex, Inc.*, No. 3:21-CV-61, 2021 WL 5795280, at *3 (S.D. Ohio Dec. 3, 2021) (quoting *Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960, 964-65 (E.D. Mich. 2021) (collecting cases). *See Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019) (acknowledging a circuit split regarding whether Supreme Court precedent requires "judicial approval of *all* FLSA settlements") (emphasis in original)).

While the Parties acknowledge the established precedent holding that Court approval is required for FLSA Collective Action settlements, recent federal jurisprudence appears to be trending in the direction of not requiring Court approval. As a matter of first impression and in support of denying an unopposed motion for approval of an FLSA collective action settlement, Judge Cole of the U.S. District Court for the Southern District of Ohio Western Division at Cincinnati recently held that the Court, "[l]acks authority to pass on the fairness or propriety of a proposed private settlement agreement among the parties" and the "[p]arties are free to stipulate to the dismissal of this action under Federal Rule of Civil Procedure 41(a), and even free to ask

the Court to retain jurisdiction over the settlement agreement in connection with that dismissal."
*Gilstrap v. Sushinati LLC*, No. 1:22-CV-434, 2024 WL 2197824, at *3-7 (S.D. Ohio May 15,
2024) (Cole, J.) (denying unopposed Motion for FLSA Approval and instructing the parties to
administer the settlement like any other private settlement pursuant to Fed. R. Civ. P. 41(a)). In so
holding, the Court held that (1) the FLSA's text does not require court approval; (2) no binding
case law holds that court approval is required; and (3) nonbinding case law supporting a Court-
approval rule for FLSA settlements is unpersuasive; (4) that a Court-approval rule is at odds with
the Federal Rules of Civil Procedure 41(a)(1)(A). *Id*.

Further, the Court held that the Court possesses no authority to approve or to reject FLSA
settlements because (1) a judicial determination approving or rejecting FLSA settlements would
constitute an advisory opinion; (2) the equitable power to approve class action settlements is
inapplicable to FLSA settlements; (3) an FLSA settlement approval would not validly constitute a
declaratory judgment; and (4) policy concerns do not justify a federal court's ultra vires approval
or rejection of an FLSA settlement. *Gilstrap*, 2024 WL 2197824, at *7-12.

As of July 9, 2024, Judge Newman of the U.S. District Court for the Southern District of
Ohio Western Division at Dayton entered an Order agreeing with *Gilstrap*. In particular, the Court
observed that "[t]he parties[2] seek clarification as to whether or not the Court must approve (or
reject) the stipulated settlement." *See Cummins, et al. v. Midmark Corporation*, No. 3:23-CV-277,
2024 WL 3405458, at *1 (S.D. Ohio July 9, 2024) (Newman, J.). In answering this question, the
Court acknowledged Judge Cole's decision in *Gilstrap* – i.e. that Court approval is not necessary
based on the text of the statute itself and precedent established in the Supreme Court and the Sixth

---

[2] The undersigned Counsel was counsel for the Representative Plaintiff in the *Cummins* matter and
sought clarity of the proper process out of an abundance of caution after becoming aware of the
*Gilstrap* decision.

Page **8** of 27

Circuit. *Id*. Upon review of *Gilstrap*, the Court held, "[t]his Court agrees with Judge Cole's well-reasoned opinion in *Gilstrap* and instructs the parties to administer the FLSA settlement under Fed. R. Civ. P. 41(a) and as agreed-upon in the terms of their private settlement." *Id*.[3]

If the Court holds that Court approval is not necessary and agrees with the reasoning outlined in *Gilstrap* and followed by *Cummins*, then the Parties respectfully request an Order instructing them to administer the settlement accordingly.

**B.  If Court Approval is Required, the Seven-Factor Standard Is Satisfied**

In the event this Court holds that the proposed Settlement is subject to approval by the Court pursuant to the FLSA, 29 U.S.C. § 216(b), the Parties request an Order granting approval of the FLSA Collective Action Settlement and maintain that Court approval is warranted in all respects as "fair, reasonable, and adequate." *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 WL 6536342, at *4 (S.D. Ohio Sep. 25, 2020) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Id.*

While Courts may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case, *Gentrup v. Renovo Servs.,*

---

[3] The Parties herein are indifferent as to whether the Court's approval is required or not, but are requesting an Order out of an abundance of caution due to recent jurisprudence in *Gilstrap* and *Cummins*.

*LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011), application of these principles to this settlement demonstrates that approval is warranted.

### 1.     No Indicia of Fraud or Collusion Exists

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Satterly*, 2020 WL 6536342, at *4 (citing *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.). Here, the Agreement was achieved only after arms-length and good faith negotiations between the Parties over contested material factual and legal issues after each Party had the opportunity to evaluate Defendant's time and payroll data to determine the potential alleged damages at issue if this case were to continue. Because there is no indicia of fraud or collusion, this factor favors approval of the settlement.

### 2.     Complexity, Expense and Duration of Litigation Favor Approval

The policy favoring the settlement of collective actions applies here. The Sixth Circuit has acknowledged the complexity of a FLSA and Rule 23 hybrid wage and hour collective/class action lawsuit. *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 898 (6th Cir. 2019). Settlement avoids the costs, delays, and multitude of other problems associated with them. *Gresky v. Checker Notions Co. Inc.*, No. 3:21-CV-01203, 2022 WL 3700739, at *5 (N.D. Ohio Aug. 26, 2022); *Clark v. Miller Valentine Partners Ltd II*, No. 1:20-CV-295, 2023 WL 5087233, at *5 (S.D. Ohio Aug. 8, 2023) (Cole, J.). Moreover, the Parties disagree over the merits of Representative Plaintiff's claims, including, but not limited to whether the Additional Remuneration in the form of the commission was not included in the regular rate of pay for purposes of calculating the applicable overtime rates, whether the two-year limitations period for non-willful violations or three-year limitations

period for willful violations applies, and whether Plaintiffs would be entitled to liquidated damages if they were to prevail on the merits.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to the Plaintiffs promptly and efficiently, and now instead of some unknown time possibly far off in the future.

### 3.    Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement. Defendant produced relevant employment policies and procedures, timekeeping and payroll records, and both Parties used those same records to create their own damages model. The Parties also conducted their own independent investigations of Representative Plaintiff's allegations and claims. As such, all Parties were able to perform a detailed analysis of the risks and possible outcomes of this case and the potential damages should Plaintiffs prevail on the claims, which allowed the Parties to negotiate a settlement based on facts and data. Additionally, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, were complex, and all aspects of the dispute are well-understood by both sides.

### 4.    The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but also recognize that protracted litigation will be uncertain in terms of duration, cost, and result. Moreover, Defendant disputed Plaintiff's claims, raised a variety of defenses, and the outcome of those disputes and defenses are uncertain as well. Accordingly, if this case is not settled, it is possible that Plaintiffs would receive no compensation or, if they do receive compensation, it will be after protracted litigation with the possibility of appeals. By settling the case at this relatively early stage

of the litigation, the Parties bypass the inherent risks of litigation and achieve finality on this matter. This factor favors approval of the settlement. *Satterly*, 2020 WL 6536342 at *6 ("the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for years, which favors this factor").

### 5.    Class Counsel and the Representative Plaintiff Favor Approval

"The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference."  *Satterly*, 2020 WL 6536342 at *7; *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). The Parties' counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. (*See* Ex. B, Bryant Decl., ¶¶ 2-13) Plaintiffs' Counsel supports the Settlement as fair and reasonable, and in the best interest of Plaintiffs and the class as a whole, as described in the Declaration of Daniel I. Bryant. Representative Plaintiff also approves of the Settlement. (Ex. B, Bryant Decl., ¶¶ 19-39.)  Accordingly, this factor favors approval of the Settlement.

### 6.    The Reaction of Absent Class Members

If the Court approves the settlement, only Representative Plaintiff and the Opt-In Plaintiffs will be bound by the Agreement. Those that do not join the case will not be bound.

### 7.    The Public Interest

As the Sixth Circuit recently noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Déjà Vu Consulting, Inc.*, 925 F.3d at 899 (6th Cir. 2019). The public

interest favors the settlement of collective/class action litigation, which is especially true in cases involving wage and hour claims because by their very nature, inherently implicate the public interest. *Gresky*, 2022 WL 3700739, at *6 (citing *Wright*, 2018 WL 3966253, at *5). Here, rather than risk the uncertainty of continued litigation, the Settlement confers immediate benefits on the Plaintiffs, avoids the risks and expense of further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports approval of the Settlement.

### C.      The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, a court should also ensure that the distribution of settlement proceeds is equitable. *Gresky*, 2022 WL 3700739, at *6. Equity does not dictate that the proceeds must be shared on a pro-rata basis, so long as the ultimate distribution is fair, reasonable, and adequate. *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *7 (N.D. Ohio Sept. 13, 2021) (Helmick, J.). "In the Sixth Circuit, the recovery in wage and hour cases is often 7–11%." *Ousley v. CG Consulting, LLC*, No. 2:23-cv-1435, 2023 WL 3470522, at *4 (S.D. Ohio May 16, 2023) (collecting cases); *Clark*, 2023 WL 5087233, at *6.

In this case, the Settlement compensates Eligible Plaintiffs for alleged unpaid overtime wages proportionate to the amount of alleged unpaid overtime owed to them as calculated by Plaintiffs' Counsel during the applicable Calculation Period. "This ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds." *Satterly*, 2020 WL 6536342, at *8. Based upon Representative Plaintiff's calculations within the Calculation Period, the Settlement Awards for the Plaintiffs reflect the following: (a) Eligible Plaintiffs will receive 100% of their alleged unliquidated damages plus 58% of their

liquidated damages during the Calculation Period for all the claims asserted in the Complaint;[4] and (b) the Remaining Opt-Ins will receive a minimum payment of $50 in recognition of returning a Consent Form even though they were not eligible to receive a Settlement Award because each of their respective periods of employment were either (i) ineligible because they did not work overtime; (ii) beyond the 2-year lookback period and any potential claims of alleged unpaid overtime have all expired and/or (iii) did not meet the class description. (Ex. A, Agreement, ¶ 28; Ex. B, Bryant Decl., ¶¶ 19-22) Accordingly, the settlement proceeds are overwhelmingly fair, reasonable and adequate.

### D. Plaintiffs' Counsel's Fees and Expenses Under the Lodestar Method Are Proper and Reasonable

After the Court has confirmed that the terms of Settlement are fair, it may review the Agreement as to the provision of attorneys' fees and litigation expenses to Plaintiffs' Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Providing attorneys' fees therefore is essential to ensure that low-wage workers will have access to counsel to enforce these important rights. Indeed, "[a]n award of attorneys' fees under the FLSA is mandatory, with the amount of fees within the discretion of the court." *Cruz v. VelA-Da, Inc.*, No. 3:90CV7087, 1993 WL 659253, at *3 (N.D. Ohio May 14, 1993) (emphasis added) (citing *United Slate*, 732 F.2d at 501).

In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access

---

[4] While individual Settlement Awards range from $4,648.66 to $336.31 depending on the number of eligible workweeks when they worked overtime and received Additional Remuneration during the Calculation Period, the average Settlement Award for Eligible Plaintiffs is approximately $1,060.06.

to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)). As such, "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in a FLSA case] 'encourage[s] the vindication of congressionally identified policies and rights.'" *Fegley*, at 1134–35 (quoting *United Slate*, 732 F.2d at 503).

As this Court has previously held, District Courts use the lodestar method in certain wage and hour cases involving relatively small claims and therefore small amounts of damages in question and, as a result, counsel for employees will inevitably be required to expend substantial resources and time, sometimes accruing fees several times greater than the value of damages in the case. *Harsh*, 2021 WL 4145720 at *8. Counsel for employees in these scenarios will inevitably be required to expend substantial resources and time, sometimes accruing fees under the lodestar method several times greater than the value of damages in the case. *Id.* "However, such a result is still necessary because the remedial purpose of the FLSA and wage and hour laws is to help an employee recover their wages." *Id.* After all, the very reason that the FLSA and civil-rights acts mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims can be too small to support the cost of litigating them. *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 617 (6th Cir. 2021). If courts cap the awardable fees at some percentage of the monetary value or mandate a proportionality requirement, "many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be

Page **15** of 27

unable to 'attract competent counsel' to represent them." *Id. See also Clark*, 2023 WL 5087233, at *8 (S.D. Ohio Aug. 8, 2023) (same).

*Fegley* is the seminal Sixth Circuit case that stands for the fact that there is no requirement of proportionality between the attorneys' fees and costs sought and the amount recovered for violations of the FLSA. 19 F.3d 1126, 1130 (6th Cir. 1994) (awarding attorneys' fees that were more than five times the amount awarded to the plaintiff). Since *Fegley*, many courts within the Sixth Circuit (including this Court) have regularly granted attorneys' fees and costs in excess of the amount recovered to plaintiffs in FLSA cases. *See, e.g., Funk v. Airstream, Inc.*, No. 3:17-cv260, 2019 WL 4599816 (S.D. Ohio Sept. 23, 2019) (Rice, J.) (awarding $171,663.01 in attorneys' fees and costs where $21,338.00 was awarded to the FLSA collective); *Brantingham v. Emergency Servs., Inc.*, No. 2:16-cv-1169, 2017 WL 5175866 (S.D. Ohio Nov. 8, 2017) (Deavers, M.J.) (awarding $35,586.97 in attorneys' fees and costs and $13,168.63 in damages to plaintiffs); *Ford v. Carnegie Mgmt. Servs., Inc.*, 2017 WL 4390294 (S.D. Ohio Oct. 3, 2017) (Jolson, M.J.) (awarding $89,606.74 in attorneys' fees and costs and $24,893.26 to the collective); *West v. Emeritus Corp.*, No. 3:15-CV-437, 2017 WL 2880394 (M.D. Tenn. July 5, 2017) (awarding approximately $9,000 in damages and $46,000 in fees and costs); *Jasper v. Home Health Connection, Inc.*, No. 2:16-cv-125, 2016 WL 8202768 (S.D. Ohio Oct. 14, 2016) (Sargus, J.) (awarding $63,000 in attorneys' fees and costs, and $35,000 in damages to plaintiffs); *Moran v. Al Basit, LLC*, No. 13-cv-13625, 2016 WL 8201648 (E.D. Mich. May 5, 2016) (awarding $53,402.04 in attorneys' fees and costs and $13,350 in damages to plaintiff); *Macklin v. Delta Metals Co., Inc.*, No. 2:08-cv-02667, 2011 WL 13070420 (W.D. Tenn. July 6, 2011) (awarding $48,802.02 in attorneys' fees and costs after previously only awarding $300.15 in damages);

*Abdelkhaleq v. Precision Door of Akron*, No. 5:07 CV 3585, 2010 WL 395236 (N.D. Ohio Jan. 25, 2010) (awarding $30,470.10 in attorneys' fees and $3,948.96 in damages).[5]

To calculate the lodestar, the Court first determines counsel's reasonable hourly rate(s) and the number of hours that counsel "reasonably expended" on the case. *Gresky*, 2022 WL 3700739, at *8 (citing *Rembert*, 986 F.3d at 616 (6th Cir. 2021) (citing *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013)). The district court has some discretion regarding the rates and hours that are reasonable, "but only when the court provides a clear and concise explanation of its reasons for the fee award." *Id.* (quoting *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007)). Multiplying reasonable rates times reasonable hours yields the lodestar. *Id.* (citing *Waldo*, 726 F.3d at 821). There is no proportionality limit on recoverable attorneys' fees either. *Id.* (citing *Rembert*, 986 F.3d at 617).

In arriving at the reasonable hourly rate, the court typically looks to the prevailing rate in the relevant legal community for similar services by attorneys of reasonably comparable skills, experience, and reputation. *Gresky*, 2022 WL 3700739 at *8 (citing *Adcock-Ladd v. Sec'y of*

---

[5] Awarding attorneys' fees and costs in excess of the amount recovered is not something that is unique to the Sixth Circuit, as many courts throughout the United States regularly award and confirmed attorneys' fee awards in excess of the amount recovered by the plaintiff(s). *See, e.g.*, *Albers v. Tri-State Implement, Inc.*, No. CR. 06-4242-KES, 2010 WL 960010, at *26 (D.S.D. Mar. 12, 2010) (awarding $43,797 in fees even though plaintiffs' combined damages totaled only $2,137.97); *Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, Dkt No. 819 (N.D. Ala. Feb. 17, 2009) (where in an FLSA case in which three individual donning and doffing claims were tried, the plaintiffs collectively recovered $4,937.20 in wages but were awarded $765,618.10 in attorneys' fees based on the attorneys' lodestar hourly rates); *Perrin v. John B. Webb & Assocs.*, No. 604CV399ORLKRS, 2005 WL 2465022, at *4 (M.D. Fla. Oct. 6, 2005) ("[I]n order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time."); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) (awarding $36,204.88 in fees even though plaintiff's damages totaled only $3,540.00); *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1327 (M.D. Fla. 2001); *Perdomo v. Sears, Rosebuck & Co.*, No. 97-2822-CIV-T-17A, 1999 WL 1427752, at *10 (M.D. Fla. Dec. 3, 1999); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorneys' fees for a recovery of $20,000).

*Treasury*, 227 F.3d 343, 349 (6th Cir. 2000); and *Project Vote v. Blackwell*, No. 1:06-cv-1628, 2009 WL 917737, at *10–11 (N.D. Ohio Mar. 31, 2009). "Courts will frequently award fees based on an attorney's customary rate, because 'normal billing rates usually provide an efficient and fair short cut for determining the market rate.' " *Clark*, 2023 WL 5087233, at *8 (quoting *Project Vote*, 2009 WL 917737, at *11 (internal quotation marks omitted)).

In this case, Plaintiffs' Counsel seek approval of their lodestar, including hourly rates for the attorneys that represent current market rates for individuals with their skills, experience, and reputation, and number of hours expended towards a successful resolution of the Action. In particular, attorneys Daniel I. Bryant and Matthew B. Bryant[6] seek approval of their hourly rates of $400 per hour, and Esther E. Bryant seeks approval of her hourly rate of $275 per hour. (*See* Ex. B., Bryant Decl., at ¶ 30-37) Judge Helmick approved of attorney Daniel Bryant's hourly rate of $400 as reasonable in light of his "extensive experience representing employees in wage and hour matters, expertise, and skill." *Gresky*, 2022 WL 3700739, at *8. Further, the Court held that attorney Bryant's hourly rate fell within the range of hourly rates awarded by federal courts within the State of Ohio. *Id. See also Clark v. Miller Valentine Partners Ltd II*, No. 1:20-CV-295, 2023 WL 5087233, at *8 and *10-11 (S.D. Ohio Aug. 8, 2023) (Cole, J.) (Order granting final approval). After a favorable jury verdict, Judge Morrison opined that attorney Daniel Bryant's hourly rate of $400 per hour was reasonable. *See Ousley v. CG Consulting, LLC*, No. 2:19-CV-1744, 2024 WL 1443280, at *4 (S.D. Ohio Apr. 3, 2024) (Morrison, J.).

While Defendant does not oppose the reasonableness of Representative Plaintiff's lodestar, including hourly rates and hours expended, analysis of the factors used by the Sixth Circuit still warrant the request.

---

[6] OSBA Certified Labor and Employment Specialist.

**E.** **Analysis of Factors Used by the Sixth Circuit to Evaluate an Award of Attorneys' Fees Supports Court Approval of the Requested Fee Recovery**

In *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), the Sixth Circuit established six relevant factors in the analysis of determining reasonable attorneys' fees. These factors include:

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services of an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

*Id.* As discussed below, each of these factors weighs in favor of Plaintiffs' Counsel's fee recovery of $17,500.

**1. The Value of the Benefit Rendered to the Plaintiffs Supports the Award of the Requested Attorney Fees.**

The Supreme Court defined prevailing parties as parties that achieve "success on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433. The Supreme Court further explained that, "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782, 792-93 (1989). *See also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 605 (2001) (the essential test established by the Court requires the plaintiff to achieve a "judicially sanctioned change in the legal relationship of the parties").

In this case, but-for the efforts and experience of Plaintiffs' Counsel in complex wage and hour matters, Representative Plaintiff could not have achieved a more successful outcome in this litigation. Indeed, the Plaintiffs will be receiving 100% of their alleged unpaid overtime damages

Page **19** of **27**

and 58% of liquidated damages during the Calculation Period. As to the Remaining Opt-Ins, they will still be receiving a minimum payment of $50 in recognition of returning a Consent Form even though they were not eligible to receive a Settlement Award because each of their respective periods of employment were either (i) ineligible because they did not work overtime; and/or (ii) beyond the 2-year lookback period and any potential claims of alleged unpaid overtime have all expired; and/or (iii) did not meet the putative collective class description. (Ex. A, Agreement, ¶ 34). Certainly, Plaintiffs benefited from counsel's legal skill in obtaining such a successful result. As a result, this factor favors approval of Plaintiff's request. *Gresky*, 2022 WL 3700739 at *9.

### 2. Society's Stake in Rewarding Attorneys Who Produce Such Benefits Also Supports the Award of the Requested Attorney Fees.

The second factor, "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive for others" also supports Plaintiffs' Counsel's fee request. Collective actions such as this "have a value to society more broadly, both as deterrents to unlawful behavior- particularly when the individual injuries are too small to justify the time and expense of litigation – and as private law enforcement regimes that free public sector resources." *Gresky*, 2022 WL 3700739 at *10 (quoting *Wright*, 2018 WL 3966253 at *7 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (quoting *Gascho*, 822 F.3d at 287)). As observed by the Sixth Circuit above, wage and hour cases, like this one, often involve workers with relatively small individual claims. *Gresky*, 2022 WL 3700739 at *10. Though the claims are individually small, the unpaid wages make a significant difference in the lives of workers. *Id*. Society has a strong interest in awarding attorneys who take on these cases and recover real benefits for exactly the type of workers the FLSA is designed to protect. *Id*. Were it not for the work of attorneys such as Plaintiffs' Counsel, the work of a number of employees would go uncompensated or undervalued. *Id*. (citing *Rembert*, 986 F.3d at 616-17).

Application of the above principles to this case demonstrates that *Ramey*'s second factor as to "society's stake in awarding attorney's fees" favors Court approval of Plaintiffs' Counsel's requested fee recovery.

### 3. The Fact that the Services Were Undertaken on a Contingent Fee Basis Also Supports the Award of the Requested Attorney Fees.

Despite having made investments of time and out-of-pocket expenses throughout this litigation, Plaintiffs' Counsel have received no compensation for this case. (*See* Ex. B Bryant Decl., ¶ 31) They have faced a significant risk of nonpayment because they undertook this litigation on a contingent basis. (*Id.*) *See Wright*, 2018 WL 3966253 at *6; *In re Cardinal Health*, 528 F.Supp.2d at 766 ("Several courts consider the risk of non-recovery the most important factor in fee determination"); *In re Telectronics Pacing Systems, Inc.*, 137 F.Supp.2d 1029, 1043 (S.D. Ohio 2001) ("contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery").

This factor weighs in favor of approving Plaintiffs' Counsel's requested fee recovery. Here, Plaintiffs' Counsel have devoted over fifty (50) hours[7] to this action and have risked non-payment of litigation costs of $6,679.53, knowing that, if their efforts are unsuccessful, they will recover nothing. Given the risks of establishing liability and damages and the possibility of non-payment that has been present throughout this litigation, award of the requested fee is the fair result.

### 4. The Value of the Services of an Hourly Basis also Supports the Award of the Requested Attorney Fees.

The fourth *Ramey* factor also strongly favors Plaintiffs' Counsel's requested fee recovery. Where an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award. *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995). In

---

[7] Billing records to be made available to chambers upon request.

Page **21** of **27**

calculating the "reasonable hourly rate" component of the lodestar computation, district courts initially assess the "*prevailing market rate in the relevant legal community.*" *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). (emphasis original). The market rate is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). Indeed, Courts typically look to the prevailing rate in the relevant legal community for similar services by attorneys of reasonably comparable skills, experience, and reputation. *Ousley v. CG Consulting, LLC*, No. 2:23-CV-01435, 2023 WL 3470522, at *6 (S.D. Ohio May 16, 2023) (Jolson, M.J.) (citing *Gresky*, 2022 WL 3700739, at *8 (N.D. Ohio Aug. 26, 2022) (Helmick, J.). *See also Project Vote*, 2009 WL 917737, at *11 (N.D. Ohi Mar. 31, 2009) ("Courts will frequently award fees based on an attorney's customary rate, because 'normal billing rates usually provide an efficient and fair short cut for determining the market rate.' ") (internal citations omitted). Comparable skill and experience, of course, means skill and experience in the specific area of law at issue in the case. *See Szeinbach v. Ohio State Univ.*, No. 2:08-CV-822, 2017 WL 2821706, at *3 (S.D. Ohio June 30, 2017). The Court may also consider an attorney's own normal billing rates to help calculate a reasonable fee. *Hadix*, 65 F.3d at 536 (6th Cir. 1995).

As part of settlement negotiations, Plaintiffs' Counsel has agreed to be compensated $17,500.00 in attorneys' fees even though their lodestar exceeds and will continue to exceed this amount. (*See* Ex. B, Bryant Decl. at ¶ 30-36) Because Plaintiffs' Counsel is seeking to recover their lodestar, the fourth *Ramey* factor weighs heavily in favor of Plaintiffs' Counsel's fee request.

### 5. The Complexity of the Litigation Also Supports the Award of the Requested Attorney Fees.

As this Court has observed, wage and hour matters, including class and collective actions, are inherently complex. *Gresky*, 2022 WL 3700739 at *11; *Harsh*, 2021 WL 4145720, at *5. *Accord Satterly*, 2020 WL 6536342, at *5; *Brandenburg,* 2019 WL 6310376, at *3; *Wright*, 2018 WL 3966253, at *3. Though the subject matter of the lawsuit was not unfamiliar to Plaintiffs' Counsel, payroll and time punch records were still required to be analyzed based on workweeks when Defendants' employees both worked overtime and received additional remuneration. "Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (citing *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986)). That presumption applies to Plaintiff's request because their attorneys have culled their hours, their rates have previously been approved by District Courts within the Sixth Circuit, and/or have other further established their rates and fees are appropriate in light of their expertise and skill. *Gresky*, 2022 WL 3700739 at *11 (approving hourly rates of $450 per hour for attorney Coffman and $400 per hour for attorney Bryant as reasonable); *Harsh*, 2021 WL 4145720, at *6 (N.D. Ohio Sept. 13, 2021) (Helmick, J.); *Satterly,* 2020 U.S. Dist. LEXIS 210868, at *20–21, 2020 WL 6536342 (S.D. Ohio Sept. 25, 2020)(Rice, J.) (referring to attorneys Bryant and co-counsel as "highly qualified and have substantial experience in federal litigation and class action litigation" and "substantial experience in wage-and-hour litigation."). *See also* Ex. B, Bryant Decl., at ¶ 30-36)

**6. The Professional Skill and Standing of Counsel.**

The final *Ramey* factor, "the skill and efficiency of the attorneys," also favors Plaintiffs' Counsel's requested fee recovery. *Wright*, 2018 WL 3966253 at *7. The skill and efficiency of the attorneys is evidenced by their local reputations as well as their experience and expertise in the

area. *See Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991) ("Finally, all counsel, Defense Counsel and Class Counsel alike, exercised the highest degree of skill and competence in this proceeding. It should be noted that the attorneys and their respective law firms enjoy the highest degree of respect in their communities. Furthermore, they have an outstanding reputation both locally and nationally.") As recently observed, when attorneys establish an expertise in a particular area such as wage and hour litigation, their hourly rates are further justified. *Gresky*, 2022 WL 3700739 at *11 ("The skill and efficiency of these attorneys is evidenced by their local reputations as well as their experience and expertise in the area."); *Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-CV-119, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020)(Rice, J.) (citing *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *6 (S.D. Ohio Nov. 25, 2019)) (holding that counsel's success on a specific type of case, specific legal issue, or results in other matters that directly benefit potential class members in future cases further justifies their hourly rates).

Fee applicants are to exercise "billing judgment," i.e., to exclude from their fees excessive, redundant or otherwise unnecessary hours, which would be unreasonable to bill a client. *See West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 657 F.Supp.2d 914, 921 (S.D. Ohio 2009) (quoting *Hensley*, 461 U.S. at 437). Here, Plaintiffs' Counsel has taken the affirmative steps to avoid excessive, redundant or duplicative hours during the litigation of this matter. Plaintiffs' Counsel seeks Court approval of their lodestar (i.e. hours expended multiplied by hourly rates) as follows:

| Name | Title | Total Hours | Rate per Hour | Total Fees |
|---|---|---|---|---|
| Daniel I. Bryant | Member | 26.5 | $400.00 | $10,600.00 |
| Matthew B. Bryant | Member | 11.8 | $400.00 | $4,720.00 |

| Esther E. Bryant | Associate | 16.9 | $275.00 | $4,647.50 |
| **TOTAL** | | | | **$19,967.50** |

The services rendered to Plaintiffs reflect the extensive experience Plaintiffs' Counsel has in collective/class action matters under the FLSA and employment law, experience that is outlined in the declarations submitted by Plaintiffs' Counsel to the Court. (*See, e.g.* Ex. B, Bryant Decl.) Plaintiffs' Counsel requests that the Court approve of their hourly rates and hours expended in this matter. Based on Plaintiffs' Counsel's extensive experience, expertise in the wage and hour practice area, and their efforts throughout this litigation to achieve an excellent result on behalf the Class, the "skill and efficiency of the attorneys" factor weighs in favor of Court approval of the requested fee recovery. *Wright*, 2018 WL 3966253 at *7; *Enterprise Energy*, 137 F.R.D. at 249; *Arp*, 2020 WL 6498956, at *7; and *Brandenburg*, 2019 WL 6310376, at *6.

### F. Plaintiffs' Counsel's Costs and Expenses are Reasonable because they were necessary and integral to the successful prosecution of Plaintiff's claim

Plaintiffs' Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and obtaining settlement. *Gresky*, 2022 WL 3700739, at *11 (citing *Satterly*, 2020 WL 6536342, at *11). When costs and expenses are incurred that are necessary to litigate and prosecute the lawsuit, they are reasonable. *Wright*, 2018 WL 3966253 at *7. In this case, the out-of-pocket costs are $6,679.53. (Ex. B, Bryant Decl., ¶ 38). This includes reasonable costs for commencement of the litigation, postage, the costs associated with administering notice through a third-party administrator, and the invoices for obtaining a damages model in support of reaching a successful resolution of this Action. (*Id.*)

For all of these reasons, should the Court require approval of the Settlement, the Parties maintain that it is fair, reasonable, and adequate, and the specific payments contemplated by the Agreement are equitable.

## IV.  CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court enter an Order clarifying whether the Parties are required to seek the Court's approval of an FLSA Collective Action Settlement and, depending on the outcome of the Court's Order, either Order that the parties administer the settlement pursuant to Fed. R. Civ. P. 41(a) or enter an Order approving the Settlement as fair, reasonable, and adequate in all respects and enter the proposed Order (attached hereto as Exhibit C).

Respectfully submitted,

**BRYANT LEGAL, LLC**

/s/ Daniel I. Bryant
Daniel I. Bryant (0090859)
4400 N. High St., Suite 310
Columbus, Ohio 43214
Telephone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

Matthew B. Bryant[8] (0085991)
Esther E. Bryant (0096629)
3450 W Central Ave., Suite 370
Toledo, Ohio 43606
Telephone: (419) 824-4439
Facsimile: (419) 932-6719
Email: Mbryant@bryantlegalllc.com
          ebryant@bryantlegalllc.com

*Attorneys for Representative Plaintiff and the*
*FLSA Collective Members*

/s/ Elizabeth L. Bolduc (per email approval
8/21/24)
Heidi N. Hartman (0074293)
Elizabeth L. Bolduc (0096901)
EASTMAN & SMITH LTD.
One SeaGate, 27th Floor
P.O. Box 10032
Toledo, OH 43699-0032
Telephone: (419) 241-6000
Email: HNHartman@eastmansmith.com
Email: ELBolduc@eastmansmith.com

*Attorneys for Defendant*

---

[8] OSBA Certified Specialist in Labor & Employment Law

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 21, 2024, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
